# Commonwealth *v.* Reed, Appellant.

*Appeals—Assignments of error—Charge of court.*

1. An assignment of error quoting two distinct sentences in the charge separated by a page and a half of printed matter, is bad practice.

2. Assignments of error criticising the charge in general terms, without quoting any of it ipsissimis verbis, are improper and will be disregarded.

*Criminal law—Murder—Degree of murder—Second degree—Manslaughter—Deadly weapon—Premeditation.*

3. Where the evidence on a trial of an indictment for murder has established a felonious homicide committed by the use of a deadly weapon upon a vital part of the body of the deceased, there is a presumption of murder of the second degree, and the burden is on the defendant to reduce the grade of the crime.

4. On the trial of an indictment for murder it is not error for the court to charge the jury as follows: "It is not necessary that you find that he went to the house with the intent to kill; if he formed the intent to kill with a mind capable of forming that intent, an instant before he pulled that trigger, he is guilty of murder of the first degree."

Argued Jan. 2, 1912. Appeal, No. 274, Jan. T., 1912, by defendant from judgment of O. & T. Franklin Co., Sept. T., 1911, No. 2, on verdict of guilty of murder of the first degree in case of Commonwealth v. William Reed. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Indictment for murder.   Before GILLAN, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed.   Defendant appealed.

*Errors assigned* were various instructions referred to in the opinion of the Supreme Court.

*John W. Hoke,* with him *Irvin C. Elder,* for appellant.

*D. Edward Long, District Attorney,* for appellee.

OPINION BY MR. JUSTICE POTTER, February 5, 1912:

It appears from the record in this case that William Reed was tried in the Court of Oyer and Terminer of Franklin County, for the murder of Sarah E. Mathna. The latter was employed as a domestic in Weistling Hall, the administration building of the Forestry Academy located on the State Reservation at Mont Alto, Franklin County.   Although married to another man, she had lived from September 1909 to August 1910 with Reed, but on the latter date they had separated, and the following November she obtained a position in the Forestry Academy where she had previously been employed.   On the morning of May 9, 1911, while she was grinding coffee in the kitchen of the administration building, Reed came in.   They talked together for about a quarter of an hour, being alone, when Reed drew a revolver and shot her three times, the last bullet, which penetrated near the heart, causing her death.   Reed was arrested and indicted for her murder; and on the trial in September, 1911, was convicted of murder of the first degree.

Counsel for appellant are to be commended for the faithful but temperate manner in which they have discharged their duty.   The record does not, however, dis-

close anything which would justify a reversal of the
judgment of the court below. The direct testimony as
to the shooting was that of Reed himself. He testified
that he went to the Forestry Academy, where Mrs.
Mathna was employed, for the purpose of getting from
her some pictures and papers of his which she had. He
asked her for them and she went upstairs, got them
and brought them down to the kitchen. She then took
them all, except one big one, walked around to the
range and put them in the fire. He was standing two
or three steps from her and told her that he would not
stop much to slap her for putting those things in the
stove. Then she raised up the coffee mill and told him
she would knock his head off if he did not get out of
there. She was cross the whole time he was there. He
happened to have a revolver, and started to shoot for
the purpose of scaring her, not with any intention of
hitting or hurting her. He had been drinking that
morning and was not sober. If he had been sober he
would not have done it. He did not intend to harm
her at all, just to scare her. He could only recall firing
two shots and could not see where the third shot came
from. She ran from the room. He did not follow her.
He did not remember leaving the house. Afterwards
he looked at his revolver and saw three loads had been
fired, but could not account for more than two. He
had heard a noise like a bump on the floor or someone
opening a door, as he left the room, and he thought
afterwards he might have hurt her. He decided to
give himself up, and was on his way to the squire's
office for that purpose when he met the constable who
took him into custody. The Commonwealth alleged
that the shooting was due to jealousy, and offered testi-
mony mainly of declarations by the accused, both be-
fore and after the shooting, to show premeditation.
Counsel for appellant did not attempt to secure an
acquittal, but contended for a verdict of voluntary
manslaughter.

Eighteen assignments of error have been filed, all of them to the charge of the court. In presenting the first assignment, two disconnected sentences were taken which, as actually found in the charge, are separated by a page and a half of printed matter. This is bad practice. It is unfair to the trial judge, and has frequently been condemned: Com. v. Eckerd, 174 Pa. 137; Brinton v. Walker, 15 Pa. Super. Ct. 449. The objection to the portions of the charge quoted is without merit, as they merely placed the burden of proof on the defendant to reduce the grade of the murder with which he was charged, from second degree to manslaughter. This was in accord with the rule recognized in the recent cases of Com. v. Greene, 227 Pa. 86, and Com. v. Chapler, 228 Pa. 630, that where the evidence has established a felonious homicide, committed by the use of a deadly weapon upon a vital part of the body of the deceased, there is a presumption of murder of the second degree, and the burden is on the defendant to reduce the grade of the crime. In Com. v. Gibson, 211 Pa. 546, it was said, Per Curiam, "Legal malice as an ingredient of murder is presumed from the use of a deadly weapon against a vital part of the body." In Com. v. Eckerd, 174 Pa. 137, Mr. Justice Mitchell said (p. 149) : "The intent to take life, fully formed, is presumed from the use of the weapon, and certainly where as in this case it was fired three times."

The second assignment of error is to the following extract from the charge: "It is not necessary that you find that he went to the house with the intent to kill; if he formed the intent to kill, with a mind capable of forming that intent, an instant before he pulled that trigger, he is guilty of murder of the first degree." This instruction was proper, under the authorities. In Keenan v. Commonwealth, 44 Pa. 55, Chief Justice Lowrie said (p. 56) : "Our reported jurisprudence is very uniform in holding that the true criterion of the first degree is the intent to take life. The deliberation

and premeditation required by the statute are not upon the intent, but upon the killing. It is deliberation and premeditation enough to form the intent to kill, and not upon the intent after it has been formed. An intent distinctly formed, even for a moment before it is carried into act, is enough." In Green v. Commonwealth, 83 Pa. 75, Chief Justice Agnew referring to the case of Com. v. Drum, 58 Pa. 9, repeated the language used by him in that case, as follows; (p. 80) : "If there be time to frame in the mind fully and consciously the intention to kill, and to select the weapon or means of death, and to think and know beforehand (though the time be short) the use to be made of it, there is time to deliberate and premeditate." In Com. v. Krause, 193 Pa. 306, Mr. Justice Fell said (p. 308) : "The nature of the weapon (a revolver) and the manner of its use (firing five shots, two of which were fatal) indicated an intention to kill." In Com. v. West, 204 Pa. 68, it was said, Per Curiam, (p. 70) : "We are all clearly of the opinion that the ingredients of murder in the first degree exist in this case. The fatal shot was fired from a deadly weapon and was directed against a mortal part. There was sufficient evidence, if believed by the jury, of deliberation and premeditation. The first shot did not kill but only disabled the officer. Between it and the time of firing the second and fatal shot ample time elapsed to enable the prisoner to form a conscious design to kill and to carry it into effect. As said by Judge Rush in Commonwealth v. Smith, 'No time is too short for a wicked man to form in his mind his scheme of murder and to contrive the means of accomplishing it.' "

The third and fourth assignments allege error in portions of the charge containing instructions as to the deductions to be drawn from the evidence as to the use of a deadly weapon, and as to the rules governing the proof of intent to kill. There was no error in these in-

structions, as they are justified under the authorities already cited.

In the fifth, sixth, seventh, eighth and ninth assignments of error complaint is made of portions of the charge as tending "to unduly affect and prejudice the jury against the defendant." These parts of the charge, however, are fair statements of the evidence and accurate presentations of the law.

We do not find any basis for the tenth assignment of error, which complains that the trial judge misstated to the jury the testimony of the defendant as to his recollection of the number of shots he fired. The language quoted seems to state correctly the testimony of the defendant in this respect.

In the eleventh and twelfth assignments of error it is alleged that the trial judge quoted to the jury testimony as to threats made by the defendant prior to the killing, without telling them that the testimony was specifically denied by the defendant. But an inspection of the charge shows that immediately after repeating this testimony, the trial judge said, "I am not saying that these things are so; what I am saying to you is that that is the testimony of the Commonwealth; consider if this testimony is true, and if it is true, does it show that he had a specific intent to take life. You will consider all of this evidence and determine whether or not the testimony of these witnesses is the truth." And after a few sentences he says further, "Remember not only the testimony of the Commonwealth, but remember especially the testimony of the defendant himself, notwithstanding the circumstances under which he testifies. Weigh all the evidence on both sides: Give each its due weight."

In the thirteenth, fourteenth, fifteenth and sixteenth assignments of error, the charge is criticised in general terms, but no part of it is quoted ipsissimis verbis in the specifications, as required by Rule 27. These assignments will therefore be disregarded.

In the seventeenth assignment it is averred that the court erred in not instructing the jury that they must be convinced of the defendant's guilt beyond a reasonable doubt. It appears, however, that in the sixth and seventh points submitted by defendant for charge, the court was asked to give the jury instructions on the subject of reasonable doubt. These requests were both affirmed without qualification. In the seventh point the jury were told that the mind of each juror "must be convinced beyond a reasonable doubt of the defendant's guilt before he can consent to a verdict of guilty."

In the eighteenth assignment it is alleged that the court erred in failing to call the attention of the jury to the defendant's specific denial of any intent to kill. There was no specific request for such an instruction, but it does appear that the trial judge twice said to the jury in charging on the subject of intent, that "the prisoner says that he shot to scare her." And that, as noted above he charged the jury to "remember especially the testimony of the defendant himself."

The judgment is affirmed, and it is ordered that the record be remitted to the Court of Oyer and Terminer of Franklin County, that the judgment may be executed according to law.